UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

REMO HARRISON DANIELS,

                Plaintiff,

v.                                           Case No. 25-cv-901-pp

AMY F. WOOLF, *et al.*,

                Defendants.

---

**ORDER SCREENING COMPLAINT UNDER 28 U.S.C. §1915A**

---

Plaintiff Remo Harrison Daniels, who is incarcerated at Columbia Correctional Institution and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants were deliberately indifferent to his threats of self-harm. On July 8, 2025, the court received the full $405 civil case filing fee. This decision screens the complaint. Dkt. No. 1.

**I.    Screening the Complaint**

    A.    <u>Federal Screening Standard</u>

Under the Prison Litigation Reform Act (PLRA), the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated person raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, "accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cnty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

### B. The Plaintiff's Allegations

The complaint names as defendants Amy F. Woolf, Tonia Rozmarynoski, Dr. Hillary J. Berg and Natalie Parsons. Dkt. No. 1 at 1. The plaintiff alleges that at 9:45 a.m. on April 17, 2025, he told Woolf that he planned "to cut [him]self open and bleed out." Id. at 2. Woolf placed the plaintiff on observation status, but while in a hearing room about an hour later, the plaintiff still cut his leg. Id. The plaintiff says he told Woolf and Rozmarynoski that he planned to continue cutting himself "every chance [he] get[s]." Id. He says that Woolf called for Dr. Berg, who came to speak with the plaintiff. Id. The plaintiff told Berg that he planned "to continue to cut [him]self open." Id.

The plaintiff alleges that at around 11:50 a.m., defendant Parsons was walking the plaintiff to his observation cell, and the plaintiff told Parsons that he was "bout [sic] to cut [him]self open, and blood was going to be everywhere." Id. He says that Parsons responded, "OK." Id. At around 12:02 p.m., Parsons was performing an observation check on the plaintiff and "saw [him] in blood," but she kept walking. Id. The plaintiff says he told Parsons that he needed a nurse, but Parsons told him that there was no nurse available to see him and walked away. Id. at 2. The plaintiff says he then yelled for help, and unspecified staff came and treated the cut on the plaintiff's leg. Id. The plaintiff says he continued to cut himself and "was place[d] in Restriants [sic]." Id.

The plaintiff alleges that all the defendants know that he has "a history of extensive self-harm, and suffer[s] from life-threatening self-harm behavior." Id. He claims the defendants were deliberately indifferent to his threats to harm

himself and failed to intervene to stop him in violation of his rights under the Eighth Amendment. Id. He seeks a handwritten letter of apology, better policies "to Protect Inmate[s]" and $50,000 in damages. Id. at 3. He also asks that all defendants "lost there [*sic*] jobs."

    C.    <u>Analysis</u>

The court analyzes the plaintiff's allegations under the Eighth Amendment, which prohibits cruel and unusual punishments. See <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976). An Eighth Amendment claim consists of both objective and subjective components. <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must show that he "is incarcerated under conditions posing a substantial risk of serious harm." <u>Id.</u> "A genuine risk of suicide or self-harm constitutes an objectively serious medical condition." <u>Whitaker v. Dempsey</u>, Case No. 23-1086, 2025 WL 1943948, at *3 (7th Cir. July 16, 2025) (citing <u>Miranda v. County of Lake</u>, 900 F.3d 335, 349 (7th Cir. 2018)). The subjective component requires the plaintiff to demonstrate that the prison official acted with the requisite intent, that is, that she had a "sufficiently culpable state of mind." <u>Farmer</u>, 511 U.S. at 834. The plaintiff must show the official's "actual, personal knowledge of a serious risk, coupled with the lack of any reasonable response to it." <u>Ayoubi v. Dart</u>, 724 F. App'x 470, 474 (7th Cir. 2018) (citing <u>Farmer</u>, 511 U.S. at 837, 844–45).

The plaintiff alleges that he told each defendant that he planned to harm himself by cutting himself and letting his wounds bleed. When he told Woolf, she placed him on observation status. Once on observation, the plaintiff still

4

Case 2:25-cv-00901-PP    Filed 08/12/25    Page 4 of 9    Document 7

managed to cut himself and reiterated his threats to Woolf and Rozmarynoski. Woolf called for Dr. Berg to come and speak with the plaintiff. The plaintiff told Berg that he would continue cutting himself, but he does not say whether Berg responded to his threats or took any action. The plaintiff then told Parsons that he would cut himself as she was walking him to his observation cell and again when she checked on him about fifteen minutes later. He says that Parsons ignored the plaintiff's threats, and that he cut himself. The plaintiff says that Parsons then saw him bleeding in his cell, ignored his wounds and refused to call a nurse. He says that unspecified staff eventually treated his cuts, then placed him in restraints to stop him from cutting himself.

These allegations are insufficient to state an Eighth Amendment claim against Woolf. As the court explained above, a defendant is deliberately indifferent to a threat of self-harm only if she is personally aware of the risk to the incarcerated person and fails to take reasonable measures to abate that harm. Ayoubi, 724 F. App'x at 474. This is a high bar that "'requires a showing [of] something approaching a total unconcern for the prisoner's welfare in the face of serious risks.'" Rasho v. Jeffreys, 22 F.4th 703, 710 (7th Cir. 2022) (quoting Rosario v. Brawn, 670 F.3d 816, 821 (7th Cir. 2012)). The complaint does not meet this standard. The plaintiff says all the defendants were aware of his history of self-harm. But he also alleges that Woolf responded to his threats and his completed self-harm by placing him on observation status and then calling Berg to come speak with him. Even though Woolf was "ultimately

5

unsuccessful in preventing the harm," her reasonable response to his threats "negates an assertion of deliberate indifference." Rasho, 22 F.4th at 710 (citing Farmer, 511 U.S. at 844; Peate v. McCann, 294 F.3d 879, 882 (7th Cir. 2002)). The court will dismiss defendant Woolf.

Nor will the court allow the plaintiff to proceed on a claim against Rozmarynoski or Berg. The plaintiff does not say how Rozmarynoski responded to his threats. His only allegation about Rozmarynoski is that he told her that he would continue to cut himself while he was on observation status. He does not say whether she ignored his response or otherwise acted unreasonably in response to it. The plaintiff similarly does not say how Berg responded to his threats. That she came to speak with him in observation suggests that she did not disregard his threats but instead attempted to keep him from harming himself. But the plaintiff does not provide additional detail. Without information about how Rozmarynoski or Berg responded to the plaintiff's threats, the court cannot determine whether they failed to take reasonable measures in response. Because the plaintiff's allegations do not satisfy the subjective component of an Eighth Amendment claim, the court will dismiss Rozmarynoski and Berg.

The complaint does allege sufficient facts to state a claim against Parsons. The plaintiff says that Parsons ignored his threats to harm himself at least twice, first on the way to his observation cell and then while he was in his cell and bleeding. He says that Parsons was aware that he was bleeding but refused to call a nurse and simply walked away from his cell. These allegations

satisfy both the objective and subjective components of an Eighth Amendment claim. The plaintiff may proceed on this claim against Parsons.

The court will not allow the plaintiff to proceed on a separate Eighth Amendment claim against Parsons for failing to intervene because his allegations do not support that claim. The plaintiff alleges that Parsons was aware of the plaintiff's self-harm threats and personally failed to respond reasonably. He does not allege that Parsons witnessed *other staff* violate his rights and failed to intervene and prevent that harm, which is required to state a claim for failure to intervene. See Gill v. City of Milwaukee, 850 F.3d 335, 342 (7th Cir. 2017). Even if the plaintiff's allegations supported a failure-to-intervene claim, it would be unnecessary to allow him to proceed on both proposed Eighth Amendment claims because the parties, facts and injury alleged in both claims are identical. See Carradine v. Racine Police Dep't, Case No. 24-CV-861, 2024 WL 4039886, at *9 (E.D. Wis. Sept. 4, 2024) (citing Conyers v. Abitz, 416 F.3d 580, 586 (7th Cir. 2005) ("Proceeding on different constitutional theories based on the same facts is redundant.")).

As a final note, the plaintiff asks that the defendants lose their jobs if he is successful in this lawsuit. The court has no authority to order the prison to fire its employees. The plaintiff may proceed only on his other claims for relief.

## II. Conclusion

The court **DISMISSES** defendants Amy F. Woolf, Tonia Rozmarynoski and Hillary J. Berg.

Under an informal service agreement between the Wisconsin Department of Justice and the court, the court will electronically transmit a copy of the complaint and this order to the Wisconsin Department of Justice for service on defendant Natalie Parsons. Under the informal service agreement, the court **ORDERS** the defendant to respond to the complaint within 60 days.

The court **ORDERS** that the parties must not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and filing dispositive motions.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[1] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

>Office of the Clerk
>United States District Court
>Eastern District of Wisconsin
>362 United States Courthouse
>517 E. Wisconsin Avenue
>Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss

---

[1] The Prisoner E-Filing Program is mandatory for all persons incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

the case based on his failure to diligently pursue it. The parties must notify the Clerk of Court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

Dated in Milwaukee, Wisconsin this 12th day of August, 2025.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**